**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

NORTHERN KEYSTONE TOWING
AND RECOVERY, LLC,

                Plaintiff,

    v.

MAHANOY CITY BOROUGH, et al.,

                Defendant.

CIVIL ACTION NO. 3:25-CV-01168

(MEHALCHICK, J.)

**MEMORANDUM**

Presently before the Court are Defendants Steven Slavinsky and Adam Slavinsky's (together, "Slavinsky Defendants") motion to dismiss (Doc. 10) and Defendants Mahanoy City Borough ("Mahanoy City"), John Fatula ("Fatula"), and Thomas Rentschler's ("Rentschler") (collectively, "Municipal Defendants") motion to dismiss. (Doc. 13). On June 26, 2025, Plaintiff Northern Keystone Towing and Recovery, LLC ("Northern Keystone") initiated this action by filing a complaint against Slavinsky Defendants and Municipal Defendants (together, "Defendants"). (Doc. 1). For the following reasons the Court **GRANTS** Slavinsky Defendants' motion to dismiss (Doc. 10) and **GRANTS in part** and **DENIES in part** Municipal Defendants' motion to dismiss. (Doc. 13).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the complaint and, for the purposes of the instant motion, is taken as true. (Doc. 1). Northern Keystone is a Pennsylvania towing company. (Doc. 1, ¶¶ 1, 10). Prior to April 2023, Mahanoy City only utilized one towing company, Steve's Towing SVC ("Steve's Towing"). (Doc. 1, ¶ 9). Slavinsky Defendants own and operate Steve's Towing. (Doc. 1, ¶ 5). In March 2022, Northern Keystone contacted Mahanoy City to request that it add Northern Keystone to the city's towing rotation list. (Doc.

1, ¶ 10). In response, Municipal Defendants suggested that Northern Keystone purchase property in Mahanoy City. (Doc. 1, ¶ 11). Mahanoy City then requested a price list from Northern Keystone which Northern Keystone provided in Mach 2022. (Doc. 1, ¶ 12).

In or about November 2022, Northern Keystone purchased property in Mahanoy City. (Doc. 1, ¶ 15). Northern Keystone believed that it was placed on Mahanoy City's towing rotation list and that it met the qualifications to be added to the list under Mahanoy City's ordinances. (Doc. 1, ¶¶ 13, 15). However, Mahanoy City did not utilize Northern Keystone's services in 2022. (Doc. 1, ¶ 15). In January or February 2023, Nicholas Boyle ("Boyle"), CEO of Northern Keystone, attended a Mahanoy City Council meeting and requested that Northern Keystone be placed on Mahanoy City's towing rotation list. (Doc. 1, ¶ 16). In March 2023, Mahanoy City Council voted to add Northern Keystone to the City's towing rotation list. (Doc. 1, ¶ 17) Northern Keystone towed thirty-four cars for Mahony City in April 2023. (Doc. 1, ¶ 18).

In late April 2023, Adam Slavinsky asked Mahanoy City to remove Northern Keystone from the towing rotation list because Northern Keystone did not have a salvor's license. (Doc. 1, ¶ 19). In May 2023, Rentschler, Chief of Police of Mahanoy City, and Fatula, Manager of Mahanoy City, removed Northern Keystone from Mahanoy City's towing rotation list. (Doc. 1, ¶¶ 3-4, 25). In July 2023, Northern Keystone obtained its salvor's license and informed Fatula. (Doc. 1, ¶ 30). However, on an October 6, 2023, call, Mahanoy City Council Vice President Thomas McCabe ("McCabe") informed Tyler Hope of Northern Keystone ("Hope") that Rentschler and Fatula believed Northern Keystone was not qualified to tow for Mahanoy City because Northern Keystone did not own a heavy tow trick. (Doc. 1, ¶¶ 35-36). Mahanoy City never required a heavy tow truck for any past tows. (Doc. 1, ¶

40).

On or about November 15, 2023, Northern Keystone, by and through its counsel, asked Mahanoy City to place it back on its towing rotation list. (Doc. 1, ¶ 42). Fatula then informed Northern Keystone that Mahanoy City did not have a towing rotation list despite previously placing Northern Keystone on the towing rotation list. (Doc. 1, ¶ 43).

On February 16, 2024, Northern Keystone purchased a heavy tow truck. (Doc. 1, ¶ 47). Northern Keystone informed Fatula that it purchased a heavy tow truck, and while Fatula initially maintained that Mahanoy City did not have a towing rotation list, he conceded that Mahanoy City does have a towing rotation list after Boyle presented Fatula with their prior conversation about the towing rotation list. (Doc. 1, ¶¶ 49-51). Hope then called McCabe to inform him that Northern Keystone purchased a heavy tow truck. (Doc. 1, ¶ 52). Around March 2024, the Mahanoy City Council voted unanimously for Northern Keystone to be re-added to the towing rotation list. (Doc. 1, ¶ 53). Despite this, Mahanoy City has rarely used Northern Keystone's towing services and instead almost exclusively uses Steve's Towing's services. (Doc. 1, ¶¶ 54-81, 90-92).

On June 26, 2025, Northern Keystone filed a complaint alleging three counts under 42 U.S.C. § 1983. (Doc. 1). In Count I, Northern Keystone alleges Defendants violated its rights under the due process clause of the Fourteenth Amendment. (Doc. 1, ¶¶ 99-103). In Count II, Northern Keystone alleges Defendants violated its rights under the equal protection clause of the Fourteenth Amendment. (Doc. 1, ¶¶ 104-07). In Count III, Northern Keystone alleges Fatula, Rentschler and Slavinsky Defendants conspired to violate Northern Keystone's constitutional rights. (Doc. 1, ¶¶ 108-11).

II.    **LEGAL STANDARDS**

A. MOTION FOR DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors*, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

4

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.      42 U.S.C. SECTION 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of*

*Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

According to Slavinsky Defendants, the Court should dismiss all Northern Keystone's claims against them because the complaint is devoid of specific allegations against either Adam or Steven Slavinsky. (Doc. 11, at 1-4). Slavinsky Defendants further aver that all Northern Keystone's claims against them should be dismissed because they are private actors who are not subject to liability under Section 1983. (Doc. 11, at 4-8). Slavinsky Defendants posit that Northern Keystone fails to allege the existence of an agreement between them and Municipal Defendants which could subject them to liability under Section 1983. (Doc. 11, at 4-8).

Municipal Defendants move to dismiss Count I against all Municipal Defendants, Count III against Fatula, and all counts against Mahanoy City. (Doc. 13; Doc. 14). According to Municipal Defendants, the Court should dismiss Count I because Northern Keystone fails to allege a sufficient property interest to implicate Fourteenth Amendment due process protections. (Doc. 14, at 12-21). Municipal Defendants move for dismissal of Count III against Fatula because they aver Northern Keystone fails to adequately allege that Fatula engaged in a conspiracy to violate Northern Keystone's constitutional rights. (Doc. 14, at 21-23). Finally, Municipal Defendants contend that the Court must dismiss all claims against

6

Mahanoy City because Northern Keystone fails to plead municipal liability. (Doc. 14, at 23-24).

The Court will first address Slavinsky Defendants' arguments and whether Northern Keystone sufficiently alleges Slavinsky Defendants and Fatula engaged in a conspiracy. Next, the Court will address whether Northern Keystone states a Fourteenth Amendment due process claim. Finally, the Court will address whether Northern Keystone adequately pleads municipal liability.

A.  NORTHERN KEYSTONE FAILS TO ALLEGE THE EXISTENCE OF A CONSPIRACY.

In Counts I and II, Northern Keystone alleges that Defendants are liable under Section 1983 for violations of the Fourteenth Amendment. (Doc. 1, ¶¶ 99-107). In Count III, Northern Keystone alleges Defendants are liable under Section 1983 for conspiring to violate its constitutional rights. (Doc. 1, ¶¶ 108-11). Slavinsky Defendants aver that the complaint barely references either Adam or Steven Slavinsky and does not allege any conduct which subjects them to liability. (Doc. 11, at 1-4). Slavinsky Defendants further argue that they are private actors who cannot be liable under Section 1983 without clear allegations of coordination with state actors. (Doc. 11, at 4-8). According to Slavinsky Defendants, the few references to Slavinsky Defendants throughout the complaint are insufficient to allege an agreement or understanding between Slavinsky Defendants and any of the Municipal Defendants. (Doc. 11, at 4-8). Similarly, Municipal Defendants aver that Northern Keystone fails to allege that Fatula had the authority to facilitate a conspiracy to violate Northern Keystone's constitutional rights or that Fatula took any affirmative actions in furtherance of a conspiracy. (Doc. 14, at 21-22).

In response to Slavinsky Defendants, Northern Keystone posits that Slavinsky Defendants are listed as a single defendant in the complaint, "Steven Slavinsky and Adam Slavinsky, t/d/b/a Steve's Towing SVC." (Doc. 11, at 7-8). According to Northern Keystone, every allegation regarding "Steve's Towing" in the complaint is an allegation against both Slavinsky Defendants. (Doc. 12, at 7-15). Regarding its conspiracy claim, Northern Keystone avers that it sufficiently alleges that "Fatula and [Rentschler] acted under color of law, disregarded [Mahanoy City] Council votes, and coordinated with [Slavinsky Defendants] to exclude [Northern Keystone]" from the towing rotation list and deprive it of its constitutional rights. (Doc. 16, at 13).

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). "[P]rivate actors, such as [] non-governmental defendants. . . can be said to act under color of state law only if their conduct is fairly attributable to the state." *Moore v. Coyne*, 728 F. App'x 81, 82–83 (3d Cir. 2018) (nonprecedential). To meet this requirement, a plaintiff must allege "(1) that the [private] defendants' acts were 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible' and (2) that the defendants may fairly be said to be state actors." *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 562 (M.D. Pa. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982)). A plaintiff may also meet the requirement by alleging the non-state actor plaintiff "willfully participate[d] in a joint conspiracy with state officials to deprive a person of a constitutional right." *Hynoski*, 941 F. Supp. 2d at 562.

"[T]o properly plead an unconstitutional conspiracy[;] a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). It is insufficient for a plaintiff to merely allege the existence of a conspiracy without alleging specific facts from which the Court may infer the formation of an agreement such as "a meeting of the minds between or among the alleged co-conspirators." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 658 (E.D. Pa.), *aff'd*, 572 F. App'x 68 (3d Cir. 2014); *see Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 421 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (stating "conclusory allegations that the defendants were 'acting in concert' or 'acted in collusion' cannot support [a plaintiff's civil conspiracy] claim").

As an initial matter, the Court notes that Northern Keystone does not clearly name Steve's Towing, the business entity, as a defendant in this case. (Doc. 1, ¶ 5). Instead, in the complaint, Northern Keystone notes that "Steve's Towing" may refer to both Steven and Adam Slavinsky when referenced throughout the complaint. (Doc. 1, ¶ 5). However, some allegations in the complaint refer to Adam Slavinsky specifically, some allegations appear to refer to Steve's Towing as a business entity, and none of the allegations refer to Steven Slavinsky specifically. (Doc. 1, ¶¶ 9, 19-20, 22-23, 25, 26, 41, 57, 60, 69, 79-80, 90, 92, 105, 111). Because of this, the Court agrees with Slavinsky Defendants that even though Northern Keystone avers Slavinsky Defendants are one single defendant, the complaint is unclear as to what allegations pertain to whom. (Doc. 11, at 4-8). However, even if the Court assumes every allegation regarding Adam Slavinsky or Steve's Towing is an allegation against both Slavinsky Defendants, Northern Keystone fails to allege that Slavinsky Defendants' actions are "fairly attributable to the state." *Moore*, 728 F. App'x at 82.

9

Slavinsky Defendants are private parties, not governmental officials. (Doc. 1, ¶¶ 5, 9). Northern Keystone does not allege that Slavinsky Defendants exercised "'some right or privilege created by the State.'" *Hynoski*, 941 F. Supp. 2d at 562 (quoting *Lugar*, 457 U.S. at 923). Northern Keystone avers that Slavinsky Defendants' actions may be liable under Section 1983 because they conspired with Municipal Defendants. (Doc. 12, at 15-20). However, Northern Keystone's only specific allegations against Slavinsky Defendants are that Slavinsky Defendants complained about Northern Keystone not having a salvor's license and that Slavinsky Defendants stood to gain from being the only towing service Mahanoy City utilized. (Doc. 1, ¶¶ 9, 19-20, 23, 25-26, 57, 69, 80, 90, 92, 94, 105, 111). Northern Keystone also provides conclusory allegations that Slavinsky Defendants conspired with Municipal Defendants. (Doc. 1, ¶¶ 41, 111). Northern Keystone fails to plead that Slavinsky Defendants engaged in a conspiracy because none of its allegations provide the essential elements of an agreement such as a meeting of the minds. *See Mikhail*, 991 F. Supp. 2d at 658; *see also Yoast*, 437 F. Supp. 3d at 421. Accordingly, the Court **GRANTS** Slavinsky Defendants' motion to dismiss all claims against them. (Doc. 10).

Similarly, Northern Keystone's allegations against Fatula only consist of allegations that Fatula removed Northern Keystone from the towing rotation list, circumvented the Mahanoy City Council to remove Northern Keystone from the towing rotation list, made false statements to both Northern Keystone and the Mahanoy City Council, and disbanded the towing rotation list. (Doc. 1, ¶¶ 22, 26, 28, 36, 43, 45, 49, 51, 54, 94). Northern Keystone also makes conclusory allegations that Fatula conspired with Slavinsky Defendants and Rentschler to give Slavinsky Defendants a monopoly. (Doc. 1, ¶¶ 26, 41, 60, 109). Like with Northern Keystone's allegations against Slavinsky Defendants, the Court may not infer the

10

existence of an agreement between Fatula and any other defendant because Northern Keystone fails to allege the essential elements of an agreement such as a meeting of the minds. *See Mikhail*, 991 F. Supp. 2d at 658; *see also Yoast*, 437 F. Supp. 3d at 421. The Court **GRANTS** Municipal Defendants' motion to dismiss Count III.[1] (Doc. 13).

B. NORTHERN KEYSTONE SUFFICIENTLY ALLEGES THE EXISTENCE OF A PROPERTY INTEREST.

In Count I, Northern Keystone alleges that Municipal Defendants deprived it of a protected property interests without due process of law. (Doc. 1, ¶¶ 99-103). Municipal Defendants aver that Northern Keystone fails to allege a protected property interest. (Doc. 14, at 12-21). According to Municipal Defendants, Northern Keystone does not have a protected property interest in receiving towing calls "on a more frequent basis." (Doc. 14, at 12-21). Northern Keystone counters that once Municipal Defendants added Northern Keystone to the towing rotation list, it had a protected property interest in being part of the towing rotation list and could not be removed without adequate due process. (Doc. 16, at 8-13).

Under the Fourteenth Amendment, "[n]o State shall. . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "Where a [S]ection 1983 plaintiff claims a procedural due process violation, his claim is dependent upon

---

[1]Although Municipal Defendants only provide arguments as to why Count III should be dismissed regarding Fatula, the Court dismisses Count III against all Defendants because Northern Keystone alleges relevant the conspiracy was between Fatula, Rentschler, and Slavinsky Defendants. (Doc. 1, ¶ 109). As discussed above, the Court finds that Northern Keystone fails to allege either Fatula or Slavinsky Defendants engaged in a conspiracy. Because Northern Keystone fails to allege Rentschler's other alleged coconspirators engaged in a conspiracy, the Court must also find that Northern Keystone fails to allege Rentschler engaged in a conspiracy because "a person cannot conspire with himself." *United States v. Davis*, 183 F.3d 231, 244 (3d Cir.), *amended*, 197 F.3d 662 (3d Cir. 1999).

the denial of a constitutionally protected property or liberty interest." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1256 (3d Cir. 1994). To have a property interest in a benefit provided by a state or municipal government, a plaintiff "'must have more than an abstract need or desire for [the benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Piecknick*, 36 F.3d at 1256 (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 574 (1972)); *see also Lokuta v. Angelella*, No. 3:23-CV-1617, 2024 WL 1557381, at *4 (M.D. Pa. Apr. 10, 2024), *aff'd*, No. 24-1902, 2025 WL 455454 (3d Cir. Feb. 11, 2025). "Such property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Piecknick*, 36 F.3d at 1256 (quoting *Roth*, 408 U.S. at 574).

A plaintiff does not have a property interest in benefits conferred by municipal or state regulations, guidelines, or polices without "any force of law." *Piecknick*, 36 F.3d at 1256 (finding a towing company did not have a property interest in benefits conferred by a police department's discretionary guidelines for choosing a towing company because the guidelines did not have any force of law). However, a plaintiff may have a property interest in a benefit conferred by a local ordinance with force of law. *See Mitchell v. Cooper*, 228 F. Supp. 3d 343, 352 (D. Del. 2017) (denying summary judgment because a plaintiff could have a protected interest in a benefit conferred by a city ordinance with force of law); *see also Adams v. City of Greensburg*, No. CV 17-550, 2018 WL 1318068, at *4 (W.D. Pa. Mar. 14, 2018) (denying a motion to dismiss because a plaintiff sufficiently alleged a municipal ordinance created a protected property interest in employment). To adequately allege a property interest in a benefit conferred by a municipal ordinance, a plaintiff must identify the specific ordinance which confers the benefit. *See Luongo v. Pennsylvania State Police*, 156 F. Supp. 3d 599, 607

12

(E.D. Pa. 2016) (finding a towing company failed to allege a property interest in receiving towing calls from the police because it failed to cite any "explicit [ordinance or] regulation" with force of law); *see also Lokuta*, 2024 WL 1557381, at *4 (finding the same); *see also Adams*, 2018 WL 1318068, at *4 (denying a motion to dismiss where a plaintiff identified the specific municipal ordinance conferring a benefit).

Here, Northern Keystone identifies Article VI of the Borough Code of Ordinances, Section 179-43 through Section 179-50 as the local ordinances which allegedly confer Northern Keystone with a property interest in remaining on the towing rotation list. (Doc. 1, ¶¶ 84-87). According to Northern Keystone, under these ordinances, once the Mahanoy City Council adds a towing company to the towing rotation list, Mahanoy City utilizes that company's services until the Mahanoy City Council removes the company from the list for cause. (Doc. 1, ¶¶ 84-87). Northern Keystone alleges that the Mahanoy City Council added it to the towing rotation list and thus provided it with a benefit. (Doc. 1. ¶ 17). Northern Keystone further alleges Municipal Defendants effectively removed it from the list without valid cause or any due process. (Doc. 1, ¶¶ 90-98). These allegations are sufficient to plead the existence of a property interest because Northern Keystone identifies specific municipal ordinances with force of law that allegedly conferred Northern Keystone with a benefit. *See Mitchell*, 228 F. Supp. 3d at 352; *see also Adams*, 2018 WL 1318068, at *4.

Municipal Defendants urge the Court to apply the Third Circuit's decision in *Piecknick v. Commonwealth of Pennsylvania* to find that Northern Keystone does not have a property interest in receiving towing calls because the ordinances Northern Keystone relies on are too vague to provide a property interest. (Doc. 14, at 15-21). In *Piecknick*, the Third Circuit held that a towing company did not have a property interest in the Pennsylvania State Police

13

utilizing its services because the police only granted the company a benefit through internal discretionary guidelines rather than through "a regulation [with] the force of law." 36 F.3d at 1259. Here, Northern Keystone alleges that municipal ordinances with force of law conferred Northern Keystone with a benefit, not discretionary police guidelines. (Doc. 1, ¶¶ 84-87).

Municipal Defendants further aver that the relevant municipal ordinances are vague, and Northern Keystone cannot have a property interest in "being called on a more frequent basis." (Doc. 14, at 16). However, Northern Keystone does not allege it has a property interest to receive a specific number of towing calls, but rather, that it has a property interest in staying on the tow rotation list under Mahanoy City's ordinances. (Doc. 1, ¶¶ 84-98). Northern Keystone alleges that Municipal Defendants removed it from that towing rotation list because it has "received no meaningful business from the rotation and was effectively excluded." (Doc. 1, ¶¶ 90-98). Municipal Defendants contest this assertion, but at this early stage, the Court must accept Northern Keystone's allegations as true. *See Jordan*, 20 F.3d at 1261. The Court finds that Northern Keystone pleads the existence of a property interest. *See Mitchell,* 228 F. Supp. 3d at 352; *see also Adams*, 2018 WL 1318068, at *4. Accordingly, Municipal Defendants' motion to dismiss Count I is **DENIED**. (Doc. 13).

C. NORTHERN KEYSTONE FAILS TO ALLEGE MUNICIPAL LIABILITY.

Municipal Defendants aver that the Court should dismiss all claims against Mahanoy City because Northern Keystone fails to allege "any facts supporting the existence of a policy or custom that brought about the alleged constitutional violation[s]." (Doc. 14, at 23-24). Northern Keystone counters that it alleges "sufficient well-pleaded facts regarding a municipal custom, practice or policy to state a plausible claim" for municipal liability because

14

it alleges Mahanoy City officials "acted in concert to exclude [Northern Keystone] from a public towing rotation, using arbitrary and discriminatory standards." (Doc. 16, at 18-19).

"[A] local government may not be sued under [Section 1983] for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "'[A] municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.'" *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). To state a claim for municipal liability, a plaintiff must "identify a custom or policy [which led the municipal officials violating the plaintiff's rights] and specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658; *see Benjamin v. Clark*, No. 1:20-CV-1991, 2021 WL 391987, at *5 (M.D. Pa. Feb. 4, 2021).

To hold a municipality liable for an official policy, a plaintiff must allege "a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issue[d] an official proclamation, policy, or edict" which violated a plaintiff's constitutional rights. *McTernan*, 564 F.3d at 658 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A municipality may be held liable for a "custom" where municipal officials or employees engaged in an unconstitutional course of conduct "not authorized by [official municipal] law [but]. . . 'so permanent[] and well-settled' as to virtually constitute law." *McTernan*, 564 F.3d at 658 (quoting *Andrews*, 895 F.2d at 1480); *see Gordon v. Liciardello*, No. CV 19-3761, 2024 WL 4367909, at *2 (E.D. Pa. Oct. 1, 2024) (stating "a plaintiff alleging an unconstitutional *custom* 'must evince a given course of conduct so well-settled and permanent as to virtually constitute law'" (quoting *Forrest v. Parry*, 930 F.3d 93,

15

106 (3d Cir. 2019)). Additionally, a plaintiff may state a claim for municipal liability by alleging a municipality failed to train its employees and that "failure amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citations and internal quotations omitted); s*ee Nahas v. Norman*, No. 2:24-CV-01252, 2025 WL 2021919, at *4 (W.D. Pa. July 18, 2025).

Here the Northern Keystone fails to allege the existence of either an official policy or well-settled and permanent custom to exclude Northern Keystone from its towing rotation list. (Doc. 1). In fact, Northern Keystone alleges that Fatula and Rentschler openly defied Mahanoy City's official ordinances, ignored the Mahanoy City Council's repeated votes to include Northern Keystone on its towing rotation list, and misled the Mahanoy City Council about their actions. (Doc. 1, ¶¶ 17, 26, 29, 36, 38, 40, 44, 53, 67, 68-70, 84-98). Northern Keystone also does not allege Mahanoy City inadequately trained or supervised Fatula and Rentschler. (Doc. 1). Therefore, Northern Keystone fails to state a Section 1983 claim against Mahanoy City. *See Johnson*, 975 F.3d at 403 (finding a plaintiff failed to state a claim for municipal liability where the plaintiff did not adequately allege the existence of an official policy, the existence of a well-settled and permanent custom, or a failure to train); *see also Nahas*, 2025 WL 2021919, at *4 (finding the same). Accordingly, the Court **GRANTS** Municipal Defendants motion to dismiss all claims against Mahanoy City. (Doc. 13).

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002).

Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)).

Here, granting leave to amend would not be futile regarding Northern Keystone's conspiracy claims because Northern Keystone can allege "facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co.*, 615 F.3d at 178; *see Mikhail*, 991 F. Supp. 2d at 648 (dismissing a conspiracy claim without prejudice because the plaintiff could allege "specific allegations of conspiracy"). Thus, the Court dismisses all claims against Slavinsky Defendants[2] and Count III against Municipal Defendants without prejudice. (Doc. 1). Similarly, granting leave to amend would not be futile regarding Northern Keystone's claims against Mahanoy City because Northern Keystone could file an amended complaint in which it alleges the existence of a well-settled and permanent custom or a failure to train. *See Gordon*, 2024 WL 4367909, at *3 (dismissing a municipal liability claim but granting leave to amend); *see also Nahas*, 2025 WL 2021919, at *5 (same). Thus, the Court dismisses all claims against Mahanoy City without prejudice. (Doc. 1). Northern Keystone is **GRANTED** twenty-one days to file a second amended complaint, on or before **Thursday, November 6, 2025**.

V.    CONCLUSION

For the foregoing reasons, Slavinsky Defendants' motion to dismiss is **GRANTED**. (Doc. 10). The complaint is **DISMISSED without prejudice** regarding Slavinsky Defendants.

---

[2] Northern Keystone asserts that all its claims against Slavinsky Defendants are conspiracy claims. (Doc. 12, at 19-20). While this is unclear in the original complaint, it could be made clearer in an amended complaint. (Doc. 1).

(Doc. 1). Municipal Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 13). Municipal Defendants' motion to dismiss is **DENIED** regarding Count I. (Doc. 13). Municipal Defendants' motion to dismiss is **GRANTED** regarding Count III and regarding all claims against Municipal Defendants. (Doc. 13). Count III is **DISMISSED without prejudice**. (Doc. 1). All counts in the complaint against Municipal Defendants are **DISMISSED without prejudice**. (Doc. 1).

Northern Keystone is **GRANTED** leave to file an amended complaint curing the deficiencies outlined herein, within 21 days of the date of the accompanying Order, on or before **Wednesday, March 18, 2026**.

An appropriate Order follows.

Dated: February 25, 2026                    *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States District Judge**

18